**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**ST. CROIX DIVISION**

| | | |
|---|---|---|
| **SHELLEY A. H. MOORHEAD,** | : | **CIVIL ACTION** |
| **COLLISTER M. FAHIE, and LORELEI** | : | |
| **MONSANTO** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLINE F. FAWKES, in her official** | : | |
| **Capacity as Supervisor of Elections System** | : | |
| **of the Virgin Islands, and BOARD OF** | : | |
| **ELECTIONS OF THE VIRGIN ISLANDS** | : | **NO. 26-11** |

<u>**MEMORANDUM**</u>

**Savage, J.**                                                                                           **May 26, 2026**

Seeking candidacy in the 2026 election cycle, plaintiffs allege the defendants have placed unconstitutional restraints on their ballot access. Plaintiff Shelley Moorhead, an aspiring independent candidate for Delegate to the United States House of Representatives, claims he is subject to unfair and prohibitive petition signature requirements. Plaintiff Lorelei Monsanto, a hopeful candidate for the Virgin Islands Legislature under the Democratic Party of the Virgin Islands ("DPVI"), contends an agreement between DPVI and the defendants exposes her candidacy to arbitrary rejection without any means of review. Plaintiff Collister Fahie, who seeks to run for the Virgin Islands Legislature under the banner of the Republican Party of the Virgin Islands ("RPVI"), alleges the defendants have prevented RPVI from being formally recognized under Virgin Islands law such that his party can nominate him as a candidate in the primary election.

Each plaintiff claims the statutes and procedures they challenge could deprive them of a spot on the ballot. But, they have not claimed that deprivation is actual or

imminent. For each, it is merely possible. Nor has each defendant shown that their alleged injuries, even if imminent, will have been caused by the defendants. Therefore, plaintiffs have failed to establish standing, requiring us to dismiss the case for lack of jurisdiction.

## Background

Plaintiffs challenge various local election laws and procedures enforced by the Supervisor of Elections and Board of Elections of the Virgin Islands (collectively, the "Election System" or "ESVI") they allege unconstitutionally hinder their ballot access.

### *Moorhead – Aspiring Independent Candidate*

To secure a place on the general election ballot, Moorhead must satisfy statutory qualifications that include submitting a nomination petition signed by at least 200 signatures of registered voters drawn from two election districts. *See* 18 V.I.C. § 381(b). As an independent candidate, a nomination petition is the only way Moorhead can access the ballot, whereas party-affiliated candidates can secure nomination by either petition or by party nomination. *See id.* § 381(a).

Under 18 V.I.C. § 110(e)(1), after every general election, electors who have not voted in the prior two general elections are given notice that their registration will be deemed "inactive" by the Supervisor of Elections unless they request reinstatement and provide a current address. The Supervisor is required to "post the name of any elector whose registration has been changed to inactive[.]" *Id.* § 110(e)(2). The notice must advise that inactive voters may vote if they update their registration. *Id.* Registration status is reinstated to "active" after the elector casts his or her ballot. *Id.*

On March 24, 2026, ESVI issued a "Clarification and Enforcement Notice" providing that, pursuant to 18 V.I.C. §§ 261, 347(b) and 381(b), "only qualified, active electors may be counted" for purposes of nomination petitions.[1]  Moorhead contends that independent candidates are hindered by barriers to voter registration data while party-affiliated candidates are not.[2]  Specifically, he alleges that he must "make multiple paid requests across districts . . . to identify potential petition signers," whereas party-affiliated candidates "have access to organized party voter rolls through their party infrastructure."[3] Thus, he contends, a voter's registration status "is not readily apparent at the time of [signature] collection," and independent candidates risk learning they have submitted a petition containing ineligible voters only after their petition has been rejected.[4]

Moorhead alleges the "verification-intensive petition process" independent candidates must undergo and the "uncertainty and risk inherent in [that] process, including the rejection of signatures based on voter status classification," violate his Fourteenth Amendment right to equal protection and First Amendment freedoms of speech and association.[5]

### *Monsanto – Aspiring Democratic Party Candidate*

On April 23, 2026, the DPVI entered into a mediated settlement agreement with the ESVI in *Democratic Party of the U.S. Virgin Islands v. Election System of the Virgin*

---

[1] *See* Verified Compl. for Declaratory and Injunctive Relief ["Compl."] ¶ 20, ECF No. 1; Clarification and Enforcement Notice: Inactive Voters and Nomination Petitions and Papers (attached as Ex. B to Compl.) ["Clarification Notice"], ECF No. 1-3.

[2] *See* Compl. ¶¶ 27–29.

[3] *See id.* ¶ 28.

[4] *See id.* ¶ 79.

[5] *See id.* ¶¶ 49–93.

*Islands et al.*, No. 1:26-cv-00008-RAM-EAH.[6]  The agreement requires ESVI to provide DPVI "a list of persons who returned nomination packages to the ESVI" and "notify DPVI of those persons on the list who have met the statutory qualifications for the office they seek."[7]  DPVI will then "submit a listing of registered Democrats certified by the DPVI to move on to the primary election ballot."[8]  Under the agreement, "Democratic candidates who successfully complete DPVI's screening and vetting process, and are subsequently found by [ESVI] to meet the Virgin Islands statutory requirements, are formally qualified, and shall be entitled to have their names printed on the primary ballot."[9]

Monsanto claims "[t]he standards governing DPVI's internal certification process are not reflected in any statute, are not publicly articulated, and are not subject to judicial review."[10]  Thus, she contends, the DPVI could "decline[] to certify her candidacy for any reason—or for no articulated reason" and exclude her from the primary ballot.[11]  She alleges this "state-enforced private gatekeeping" violates her right to due process by conditioning her ballot access on "unreviewable standards," and violates her right to equal protection by subjecting her to ballot-access requirements that are materially different from similarly situated candidates.[12]

---

[6] *See id.* ¶ 5; Mediated Settlement Agreement Between Democratic Party of the U.S. Virgin Islands and Election System of the Virgin Islands, Raymond J. Williams, Chairman, Board of Elections, and Caroline F. Fawkes, Supervisor of Elections (attached as Ex. A to Compl.) ["Settlement Agreement"], ECF No. 1-2.

[7] *See* Settlement Agreement ¶¶ 1, 2.

[8] *Id.* ¶ 3.

[9] *Id.* ¶ 7.

[10] Compl. ¶ 37.

[11] *Id.* ¶ 38.

[12] *Id.* at 19, ¶ 99.

*Fahie – Aspiring Republican Party Candidate*

Fahie contends that his nomination petition could be rejected because the Republican Party of the Virgin Islands has not been formally recognized by ESVI.  Thus, so he claims, there is no party to nominate him as its candidate.[13]

Under 18 V.I.C. § 341, the Supervisor of Elections "shall determine which organizations are political parties within the meaning of [18 V.I.C. § 301], and, not later than the tenth Tuesday preceding each primary, shall transmit to each board of elections a list of such political parties which shall be entitled to nominate candidates and elect party officers at primaries."[14]  Fahie claims that the defendants have failed to formally recognize his party, potentially depriving him of ballot access.[15]

**Analysis**

Article III of the Constitution limits federal courts' jurisdiction to actual "Cases" and "Controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  As part of the case-or-controversy requirement, plaintiffs must show they have standing to sue. *Id.*

To establish standing, a plaintiff must allege: (1) an "injury in fact," meaning an injury to a legally cognizable interest that is "concrete and particularized" and "actual or

---

[13] *See id.* ¶¶ 30–34.

[14] Section 301(a) provides, "Any political party in the Virgin Islands which is the officially recognized affiliate of either of the two major national political parties (of either the Democratic National Committee or the Republican National Committee) and each other political party or political body, one of whose candidates for election for a territorial office at the last preceding general election polled not less than five percent (5%) of the total number of valid ballots cast in the territory, shall be recognized as a political party within the territory, and, except as provided in sections 307 and 359 of this title or as otherwise provided by law, shall nominate all its candidates for public office, and shall elect the members of its territorial committee and such other party officers as its rules provide, by a vote of the electors enrolled as members of the party at the primary election in accordance with the provisions of this title. However, any political party or political body shall not be required to meet the 5% requirement of the total ballots cast, as provided under this subsection, but shall be automatically recognized as a political party within the territory, if the political party or political body has met the 5% requirement for at least ten (10) consecutive years."

[15] Fahie does not explicitly state in the Complaint which constitutional provision or provisions are violated by the defendants' alleged delay in "administrative proceedings."

5

imminent" rather than "conjectural or hypothetical"; (2) a causal connection between the injury and the defendant's conduct; and (3) that a favorable decision from the court would likely redress the harm.  *See AT&T Communications of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 170 (3d Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Imminent harm constitutes an injury in fact only if the threatened injury is "certainly impending." *Clapper*, 568 U.S. at 409.  As the Supreme Court has explained, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes[.]"  *Id.* (quoting *Lujan*, 504 U.S. at 565 n.2).  A threatened injury that is merely possible is insufficient.  *Id.* at 409.  Even an "objectively reasonable likelihood" that the alleged harm will occur is not enough.  *Id.* at 410.

Plaintiff Moorhead

Moorhead claims meeting the statutory requirement of 200 signatures is more burdensome than the statutory and internal party qualifications that party-affiliated candidates must meet to secure a petition.[16]  He further contends that ESVI's policy of invalidating "inactive" voters' signatures increases his burden because he must "over-collect signatures to account for anticipated rejections[.]"[17]

Moorhead does not contend 18 V.I.C § 381(b)'s signature requirement alone will preclude him from securing a place on the ballot.  He has not alleged, for example, that 200 signatures is too many or that the time frame to collect them is too short.  Rather, he

---

[16] *See* Compl. ¶ 25.  Moorhead does not explain what party-affiliated candidates must do to secure a nomination, or how those requirements compare to the requirements he must meet.

[17] *Id.* ¶ 26.

6

argues that he must over-collect signatures lest he submit a petition that, unbeknownst to him, includes signatures of "inactive" voters, risking disqualification. But, he has not shown that the rejection he fears is "certainly impending" or even probable.  He does not allege he cannot access voter registration data, only that he must pay more than party-affiliated candidates to access it.  Nor does he aver that a significant proportion of potential signatories are inactive voters. He merely contends that rejection is possible. That is not enough.

Even if Moorhead alleged that rejection of his petition was "certainly impending," he would still lack standing because he has not alleged a causal connection between the potential rejection and the defendants' conduct.  He alleges that he must "make multiple paid requests across districts simply to identify potential petition signers," whereas party-affiliated voters "have access to organized party voter rolls through their party infrastructure."[18]  But, Moorhead does not allege that this "structural disadvantage" renders it impossible for him to verify a voter's registration status or obtain the requisite number of valid signatures.  He merely claims that obtaining signatures will be more difficult than it would be were he a party-affiliated candidate.  If his petition is rejected for containing "inactive" voters' signatures, it will be due to his own failure to ascertain which electors' signatures are valid.

ESVI publishes lists of inactive voters on its website pursuant to its statutory requirement of publishing voter registration information. *See* 18 V.I.C. § 110 (providing that the Supervisor of Elections "shall post the name of any elector whose registration has been changed to inactive . . . in three places").  The freely accessible website

---

[18] *Id.* ¶ 28.

documents "inactive" voters in the St. Croix District and St. Thomas and St. John District, and provides information including the voter's name, voting district, and zip code. *See Inactive Voters*, ELECTION SYSTEM OF THE VIRGIN ISLANDS, https://vivote.gov/voters/inactive-voters/ (last visited May 26, 2026). The list of inactive voters in the St. Croix District was posted on April 28, 2026 and is current as of that date. *See id.* The list of inactive voters in the St. Thomas and St. John District was posted on May 4, 2026 and is current as of April 30, 2026. *See id.*

The identities of inactive voters have been available to Moorhead. If his petition is rejected because he collected invalid signatures, it is his lack of diligence—not the defendants' conduct—to blame. In short, any rejection based on insufficient signatures of eligible voters would be caused by Moorhead, not ESVI.

Because Moorhead has not established an injury in fact and a causal link between any injury and the defendants' conduct, he lacks standing to bring this action.

## Plaintiff Monsanto

Monsanto has also failed to establish an injury in fact. She claims she will be excluded from the ballot "*if* DPVI declines to certify her candidacy for any reason[.]"[19] She does not claim DPVI will decline to certify her candidacy. She has alleged merely that it is capable of doing so. That is insufficient.

## Plaintiff Fahie

Fahie contends "unresolved administrative proceedings before the office of the Lieutenant Governor" are preventing the establishment of the Republican Party of the

---

[19] *Id.* ¶ 38 (emphasis added).

8

Virgin Islands as a formally recognized entity authorized to nominate him.[20]  So, he claims, "the party entity under whose banner he is proceeding may be found by ESVI or the Lieutenant Governor's Office to lack established legal standing, potentially rendering his nomination petition procedurally defective through no act or omission of his own."[21] Thus, like Moorhead and Monsanto, Fahie has alleged only potential harm.

He has also failed to link his potential harm to the defendants.  He avers that the determination is pending before "the Lieutenant Governor's Office."[22]  The Lieutenant Governor is not a defendant in this case.

Fahie invokes 18 V.I.C. § 341, under which the Supervisor of Elections must officially designate an organization a political party if it meets requirements set forth in 18 V.I.C. § 301.[23]  That designation renders the party "entitled to nominate candidates and elect party officers at primaries."  18 V.I.C. § 341.  To the extent Fahie infers that the defendants' failure to recognize the RPVI under Section 341 is the cause of his alleged harm, that argument fails because he has not alleged that the RPVI meets the requirements set forth in 18 V.I.C. § 301.

Fahie does not identify what "administrative proceedings" are before the Office of the Lieutenant Governor beyond the assertion that "[a]pplications for the trade name 'Republican Party of the Virgin Islands' have been accepted for processing and remain pending."[24]  But, he has not alleged facts showing that defendants are the cause of that

---

[20] *Id.* ¶ 31.

[21] *Id.* ¶ 33.

[22] *Id.* ¶¶ 31, 33.

[23] *Id.* ¶ 32; 18 V.I.C. § 341.

[24] *Id.* ¶ 31.

9

delay, or how the purported trade-name applications relate to the requirements for party recognition under Sections 301 and 341.

Fahie has alleged only possible harm, and he has not established a causal connection between the possible harm and the defendants' conduct.  Therefore, he has no standing to bring his claims.

## Conclusion

The plaintiffs have not set forth specific facts demonstrating that the defendants will impermissibly reject their nomination petitions.  They only speculate as to how ESVI and Fawkes will rule in determining their eligibility for candidacy on the ballot.  The plaintiffs lack standing.  Thus, we lack jurisdiction.